IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRANXITION, INC.,

                         Plaintiff,

       v.

NOVELL, INC.,

                       Defendant.

No. 3:12-cv-01404-HZ

OPINION & ORDER

Dayna Jean Christian
Immix Law Group
121 SW Salmon St., Ste. 1000
Portland, OR 97204

Paul H. Beattie
Rimon, P.C.
7920 SE Steller Way
Snoqualmie, WA 98065-9004

      Attorneys for Plaintiff

Daniel P. Larsen
Ater Wynne, LLP
1331 NW Lovejoy St., Ste. 900
Portland, OR 97209-2785

Jared J. Braithwaite
L. Rex Sears
Maschoff Brennan
201 South Main St., Ste. 600
Salt Lake City, UT 84111

Sterling A. Brennan
Maschoff Brennan
20 Pacifica, Ste. 1130
Irvine, CA 92618

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Tranxition, Inc. brings this patent infringement action against Defendant Novell

Inc., alleging infringement of its United States Patent Nos. 6,728,877 ('877 patent) and

7,346,766 ('766 patent), both of which are titled "Method and System for Automatically

Transitioning of Configuration Settings Among Computer Systems."  Plaintiff filed a motion for

an order construing terms [72] in the '877 and '766 patents.  A two-day hearing was held on

August 26-27, 2014.  At the conclusion of oral argument, I resolved the dispute as to all but one

of the contested terms or phrases, "format," which I took under advisement.  I find that "format"

is not indefinite and construe the term to mean "a specific arrangement of data."

## BACKGROUND

    The '877 and '766 patents share a history.  The '766 patent is a continuation of the patent

application that later became the '877 patent.  The two patents share the same title, abstract, and

specification.  In general, the invention is a method and system for transferring configuration

settings, a computer's "personality," from an old computer system to a replacement computer

system.  The abstract describes the invention as follows:

> A method and system for automatically transitioning configuration settings
> among computer systems.  Multiple configuration settings comprising a computer
> "personality" are located on a source computing system using multiple transition

rules from a personality object.  The computer personality includes customization choices, data files, electronic mail, system preferences, application customization choices, the network environment, browser information, etc.  The configuration settings are extracted from multiple locations on the source computing system. The multiple extracted configuration settings are stored in a pre-determined transition format.  The multiple extracted configuration settings are manipulated. A transition package is created from the multiple manipulated configuration settings.  The transition package includes the multiple manipulated configuration settings.  The transition package is sent to a target computing system.  The transition package is infused on the target computing system to automatically transition configuration settings from the source computing system to the target computing system.  The method and system may vastly reduce transition, configuration and deployment times for service providers, corporations, and end-users when a new computing system is deployed.

Compl. Ex. A ('877 patent) at 1, Ex. B ('766 patent) at 1.  Plaintiff asserts that Defendant infringes at least claims 1 and 16 of the '877 patent.  Am. Compl. ¶¶ 8, 15.  Claims 1 and 16 are shown below.

> **1.**  A method in a computer system for preparing configuration settings for transfer from a source computing system to a target computing system, the method comprising:
>
>> providing configuration information about configuration settings on the source computing system, the configuration information including a name and location of each configuration setting;
>>
>> generating an extraction plan that identifies configuration settings to be extracted from the source computing system, the generating including providing a list of configuration settings known to the source computing system and including identifying active configuration settings out of the provided list of configuration settings to be extracted from the source computing system;
>>
>> extracting the active configuration settings of the extraction plan from the source computing system, the extracted configuration settings being located using the provided configuration information;
>>
>> generating a transition plan that identifies configuration settings to be transferred from the source computing system to the target computing system, the generating including providing active configuration settings of the extraction plan and including identifying from the active configuration settings of the extraction plan active configuration settings to be transferred from the source computing system to the target computing; and

for each active configuration setting of the transition plan,
retrieving the extracted configuration settings identified as active
configuration settings of the transition plan; and

transitioning one or more of the retrieved configuration settings
from a format used on the source computing system to a format
used on the target computing system.

'877 patent, 17:29-62.

**16.** A computer system for preparing configuration settings for transfer from a
source computing system to a target computing system, comprising:

configuration information about configuration settings on the source
computing system, the configuration information including a name and
location of each configuration setting;

a user interface application for generating an extraction plan that identifies
configuration settings to be extracted from the source computing system
and a transition plan that identifies configuration settings to be transferred
from the source computing system to the target computing system, the
extraction plan identifying active configuration settings to be extracted
from the source computing system, the transition plan identifying active
configuration settings of the extraction plan to be transferred from the
source computing system to the target computing;

an extraction application for extracting the active configuration settings of
the extraction plan from the source computing system, the extracted
configuration settings being located using the provided configuration
information; and

an transition application that retrieves the extracted configuration settings
identified as active configuration settings of the transition plan and
transitions one or more of the retrieved configuration settings from a
format used on the source computing system to a format used on the target
computing system.

Id. at 18:42-19:3.

Plaintiff also asserts that Defendant infringes at least claim 1 of the '766 patent, as stated

below.

**1**. A method for preparing configuration settings of a source computing system
for transitioning for use by a target computing system, the method comprising:

4 - OPINION & ORDER

providing information about configuration settings of the source
computing system, the information identifying locations of configuration
settings;

displaying an indication of the configuration settings that can be extracted
from the source computing system;

receiving a selection of configuration settings to be extracted from the
source computing system for use by the target computing system;

extracting the selected configuration settings from the locations of the
source computing system indicated by the information;

manipulating at least one of the extracted configuration settings from a
location, a name, a value, and a format used on the source computing
system to a location, a name, a value, and a format used on the target
computing system; and

storing the extracted configuration settings and the at least one
manipulated configuration settings on a storage device], wherein the
stored configuration settings can be used by the target computing system
to control its operation.

'766 patent, 17:51-18:8.

CLAIM CONSTRUCTION STANDARDS

I.    General Rules

"[T]he construction of a patent, including terms of art within its claim, is exclusively

within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372

(1996). Claims are construed independently and not simply as a choice between the parties'

proposed constructions. Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1555 (Fed.

Cir. 1995). "[C]laims should be so construed, if possible, as to sustain their validity." ACS

Hosp. Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577 (Fed. Cir. 1984) (citations omitted).

The claim language specifies "'the subject matter which the applicant regards as his invention.'"

Markman, 517 U.S. at 373 (citing and quoting 35 U.S.C. § 112).

To construe a patent claim, courts look to the language of the claims in the patent itself, the description in the patent's specification, and the prosecution history of the patent, all of which constitute a record "on which the public is entitled to rely." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996); see also Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1372 (Fed. Cir. 2001). Claim language is given its "ordinary and accustomed meaning as understood by one of ordinary skill in the art." Dow Chem. Co., 257 F.3d at 1372 (citation omitted). Courts cannot rewrite claims, but must "give effect to the terms chosen by the patentee." K–2 Corp. v. Solomon S.A., 191 F.3d 1356, 1364 (Fed. Cir. 1999) (citation omitted). In most cases, the court should be able to resolve ambiguous claim terms by analyzing only the intrinsic evidence. See Phillips v. AWH Corp., 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (en banc).

II.     Claim Language

"The actual words of the claim are the controlling focus." Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir. 1998). The starting point for claim construction is a disputed term's ordinary meaning. Phillips, 415 F.3d at 1313. Ordinary meaning, in the patent claim construction context, is the meaning that a person of ordinary skill in the art would attribute to a claim term in the context of the entire patent at the time of the invention, i.e., as of the effective filing date of the patent application. ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1374 (Fed. Cir. 2009).

There is a "heavy presumption" that a claim term carries its "ordinary and customary meaning," and any party seeking to convince a court that a term has some other meaning "must, at the very least," point to statements in the written description that "affect the patent's scope." Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999) (quotation

marks omitted).  This may be accomplished if:  (1) "a different meaning is clearly and

deliberately set forth in the intrinsic materials" of the patent or (2) use of "the ordinary and

accustomed meaning…would deprive the claim of clarity…."  K–2 Corp., 191 F.3d at 1363.  In

making this assessment, the court should use common sense and "the understanding of those of

ordinary skill in the art" of the patent at issue, unless the patent history supplies another meaning.

Id. at 1365; Digital Biometrics, 149 F.3d at 1344.

      "An accused infringer may overcome this 'heavy presumption' and narrow a claim term's

ordinary meaning, but he cannot do so simply by pointing to the preferred embodiment or other

structures or steps disclosed in the specification or prosecution history."  CCS Fitness, Inc. v.

Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002).  As clarified by the Federal Circuit:

> [A] court may constrict the ordinary meaning of a claim term in at least one of
> four ways.  First, the claim term will not receive its ordinary meaning if the
> patentee acted as his own lexicographer and clearly set forth a definition of the
> disputed claim term in either the specification or prosecution history.  Second, a
> claim term will not carry its ordinary meaning if the intrinsic evidence shows that
> the patentee distinguished that term from prior art on the basis of a particular
> embodiment, expressly disclaimed subject matter, or described a particular
> embodiment as important to the invention.
>
> Third,…a claim term also will not have its ordinary meaning if the term chosen
> by the patentee so deprive[s] the claim of clarity as to require resort to the other
> intrinsic evidence for a definite meaning.  Last, as a matter of statutory authority,
> a claim term will cover nothing more than the corresponding structure or step
> disclosed in the specification, as well as equivalents thereto, if the patentee
> phrased the claim in step- or means-plus-function format.

Id. at 1366–67 (quotation marks omitted).

III.    The Patent's Specification

      "[C]laims are always construed in light of the specification, of which they are a part."

Netword LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001).  "That claims are

interpreted in light of the specification does not mean that everything expressed in the

specification must be read into all the claims." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (quotations omitted). It is improper to import, or "read in" to a claim, a limitation from the specification's general discussion, embodiments, and examples. E.g., Enercon GmbH v. Int'l Trade Comm'n, 151 F.3d 1376, 1384 (Fed. Cir. 1998); Intel Corp. v. United States Int'l Trade Comm'n, 946 F.2d 821, 836 (Fed. Cir. 1991) (holding that "[w]here a specification does not require a limitation, that limitation should not be read from the specification into the claims."); Constant v. Advanced Micro–Devices, Inc., 848 F.2d 1560, 1571 (Fed. Cir. 1988) (finding that "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims.").

Still, "[c]laims are not interpreted in a vacuum." Slimfold Mfg. Co. v. Kinkead Indus., Inc., 810 F.2d 1113, 1116 (Fed. Cir. 1987). "[T]he specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." Vitronics, 90 F.3d at 1582. Thus, it is improper to eliminate, ignore, or "read out" a claim limitation in order to extend a patent to subject matter disclosed, but not claimed. See, e.g., Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572, 1582–83 (Fed. Cir. 1996).

Claims may not "enlarge what is patented beyond what the inventor has described as the invention." Netword, LLC, 242 F.3d at 1352. For example, when the patent specification describes the invention as including a feature, the claims should be construed to require that feature. See, e.g., Watts v. XL Sys., Inc., 232 F.3d 877, 883 (Fed. Cir. 2000). Similarly, when the specification criticizes or disclaims certain features in the prior art, the claims should not be read to encompass the criticized features. SciMed Life Sys., Inc. v. Advanced Cardiovascular

Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001) (finding that the criticism of one type of "lumen" in patent excluded that type from construction of the claim term).

Finally, claims should not be limited to the preferred embodiment.  CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1158 (Fed. Cir. 1997); see also Amhil Enter., Ltd. v. Wawa, Inc., 81 F.3d 1554, 1559 (Fed. Cir. 1996) (holding that "[a] preferred embodiment…is just that, and the scope of a patentee's claims is not necessarily or automatically limited to the preferred embodiment").

"[T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice."  Phillips, 415 F.3d at 1323.  "[T]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification."  Decisioning.com, Inc. v. Federated Dep't Stores, Inc., 527 F.3d 1300, 1307-08 (Fed. Cir. 2008) (quotation marks omitted).  "[A]ttempting to resolve that problem in the context of the particular patent is likely to capture the scope of the actual invention more accurately than either strictly limiting the scope of the claims to the embodiments disclosed in the specification or divorcing the claim language from the specification."  Id. at 1308.  There is therefore "no magic formula or catechism for conducting claim construction," and the court must "read the specification in light of its purposes in order to determine whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive."  Id. (quotation marks omitted). In walking this "tightrope," Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1373 (Fed. Cir. 2007), the court hews to the question of "how a person of ordinary skill in the art would understand the claim terms."  Phillips, 415 F.3d at 1323.

IV.     Prosecution History

Prosecution history of a patent with the United States Patent and Trademark Office (USPTO) "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." Jonsson v. Stanley Works, 903 F.2d 812, 817 (Fed. Cir. 1990) (quotation marks omitted).  The prosecution "history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims.  As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims." Vitronics, 90 F.3d at 1582–83. Any statements or actions made in the prosecution history by the patentee characterizing what the claimed invention includes or excludes provide notice to the public as to the scope of the claims and therefore are binding on the construction of the claims. See, e.g., Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc., 222 F.3d 951, 957 (Fed. Cir. 2000) (allowing patentee to erase actions in the prosecution history would be "inimical to the public notice function provided by the prosecution history.").

V.      Extrinsic Evidence

Consideration of intrinsic evidence will resolve any claim term ambiguity in most circumstances. See Phillips, 415 F.3d at 1313-14.  Where it does not, however, the court may consider certain "extrinsic evidence." See id. at 1317.  Expert testimony, for example, may provide helpful background on the technology at issue, explain how an invention works, or establish that a claim term has a particular meaning in the relevant field. See id. at 1319. Dictionaries and treatises may also be helpful in this regard. Id. at 1318.  However, precedent counsels against reliance on dictionary definitions at the expense of the specification because

such reliance "focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." Id. at 1321; see also Nystrom v. Trex Co., 424 F.3d 1136, 1145 (Fed. Cir. 2005).

In the end, the court's ultimate goal is to construe the disputed terms in a manner consistent with the way the inventor defined them and a person of ordinary skill in the art would understand them. j2 Global Commc'ns Inc. v. Captaris Inc., No. CV 09–04150 DDP (AJWx), 2011 WL 837923, at *2 (C.D. Cal. Mar. 4, 2011). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Phillips, 415 F.3d at 1316 (quotation marks omitted).

DISCUSSION

I.    Oral Argument Rulings

The following terms were construed for the '877 and '766 patents after the completion of oral argument.

| Term | Ruling |
|------|--------|
| configuration settings | settings added and/or customized, but not including default settings |
| extraction plan | a plan for extracting configuration settings that includes a full list of identity units to be located, an exclusion list, and an inclusion list |
| (transitioning or transitions) one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system | (changing or changes) the arrangement of data of one or more retrieved configuration settings from a format used on the source computing system to a format used on the target computing system |
| value | data stored in a variable or constant that is distinct from location, name, and format |
| personality | collection of configuration settings |

| Term | Ruling |
|---|---|
| personality object | an object oriented programming object, which (1) is not directly associated with an initialization file and (2) is not a wizard or other programming module capable of reading and writing settings, containing (3) at least one object with information about configuration settings and (4) multiple transition rules for locating configuration settings |
| inclusion list | a user-selectable list of configuration settings for transfer |
| transition plan | a plan that identifies configuration settings to be transferred |
| active configuration settings | configuration settings selected from an inclusion list |
| means for providing the transitioned configuration settings to a target computing system for installation of the configuration settings on the target computing system | Functionality:  providing the transitioned configuration settings to a target computing system for installation of the configuration settings on the target computing system<br><br>Agreed Structure:  floppy disk, zip disk, CD-ROM, email, TCP/IP, FTP, or other network transfer mechanisms, and the equivalents thereof |
| stored configuration settings[1] | '766 patent claims 1-15, 42-46:  extracted configuration settings and at least one manipulated configuration setting<br><br>'766 patent claims 37-41:  extracted configuration settings, calculated configuration settings, and at least one manipulated configuration setting |
| manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system | changing at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, name, value, and format used on the target computing system |

In addition, the parties had previously agreed that the following terms would be given their plain and ordinary meaning:  "providing," "application," "installation application," "information for locating," and "storing the extracted configuration settings and the at least one manipulated configuration settings on a storage device."

---

[1] The parties had disputed the definition of this term, but at the hearing, Plaintiff agreed to Defendant's proposed definition.

II.    Construction of "Format"

Plaintiff argues that "format" should be construed as "specific arrangement of data." Joint Proposed Claim Constr. [65] at 7.  Defendant argues that the term is indefinite and not amenable to construction.  Id.  Alternatively, Defendant proposes that the term be construed as "the specific arrangement of data that is distinct from name, location, and value."  Id.

A.    Indefiniteness

I first address the indefiniteness argument.  A patent must contain claims "particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."  35 U.S.C. § 112(b).  "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent."  Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Indefiniteness under § 112(b) is a legal issue for the court to resolve.  Biosig Instruments, Inc. v. Nautilus, Inc., 715 F.3d 891, 897 (Fed. Cir. 2013).  Claims are not indefinite when "viewed in light of the specification and prosecution history, [they] inform those skilled in the art about the scope of the invention with reasonable certainty.  The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2129 (2014).  The mere "reduction of the meaning of a claim into words is not dispositive of whether the term is definite."  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co. ("Star Scientific I"), 537 F.3d 1357, 1371 (Fed. Cir. 2008) (citations omitted).  But "[a]bsolute clarity is not required to find a claim term definite."  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co. ("Star Scientific II"), 655 F.3d

1364, 1373 (Fed. Cir. 2011). "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1380 (Fed. Cir. 2001).

General principles of claim construction are applicable to determining "whether allegedly indefinite claim language is subject to construction." Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1319 (Fed. Cir. 2008). Thus, the court may consider intrinsic evidence consisting of the claim terms, the specification, and the prosecution history. Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332-33 (Fed. Cir. 2010). The court may also consider extrinsic evidence when necessary to resolve disputes of indefiniteness. Exxon Research, 265 F.3d at 1376.

Defendant argues that "format" is indefinite because Plaintiff used the term inconsistently. Def.'s Resp. 10. On the one hand, Defendant points out that the specification describes transitioning configuration settings from a format used on the source computing system to a format used on the target computing system. '766 patent, 13:31-34. Two examples of such transitioning are explained in specification.

> The manipulation at Step **54** also includes *transitioning one or more configuration settings from a format used on the source computing system to a format used on the target computing system.* For example, a configuration setting for a computer monitor may be stored with the name configmonitor-old on the source computer system. However, on the target computer system, the same configuration setting may be stored with a name configmonitor-new. *In addition, a configuration setting may be stored in a first directory-A on the source system, and in a second directory-B, on the target system.*

Id. at 13:34-41 (emphasis added). Defendant focuses on the second example, where the configuration setting is stored in a different directory on the target computing system, and argues that "format" encompasses changing the location of the configuration setting. Def.'s Resp. 10.

On the other hand, Defendant argues that during the prosecution of the '766 patent, Plaintiff took the opposite position—that "format" does not encompass location. Id. The

USPTO had rejected claim 37 of the patent application (claim 1 of the '766 patent) in light of

"Hunter," a prior art reference.  Sears Decl. Ex. D (Feb. 5, 2007 Resp.) at 13.  In relevant part,

claim 37 of the patent application originally stated:

> manipulating at least one of the extracted configuration settings from a format
> used on the source computing system to a format used on the target computing
> system…

Id. at 2.  To overcome the rejection in light of Hunter, Plaintiff amended claim 37 by adding the

underlined language:

> manipulating at least one of the extracted configuration settings from a location, a
> name, a value, and a format used on the source computing system to a location, a
> name, a value, and a format used on the target computing system…

Id. at 2.  Plaintiff explained to the USPTO that Hunter did not "teach or suggest

manipulating…configuration settings."  Id. at 14.  Plaintiff further argued that Hunter's use of

"tokens" is not the same as "manipulating the format" of the configuration setting.  Id.  As an

example, in Hunter, the location of a configuration setting corresponds to a particular "path"

identified by the token.  Id.  Plaintiff argued that having different paths on the source and target

computing settings is not the same as manipulating the configuration setting because "the path of

a setting does not correspond to the setting's format."  Id.  In light of this last statement,

Defendant argues that Plaintiff distinguished "format" from "location," i.e., that changing the

"format" of a setting is different from changing the "location" of the setting.  Def.'s Resp. 10.

In response to Defendant's indefiniteness argument, Plaintiff concedes that "format" and

"location" are not the same, and cannot be because the terms are claimed separately in the claims

of the '766 patent.  Pl.'s Reply 7.  But Plaintiff disputes that the specification equates "format"

with "location," arguing that the specification deals with "format, naming conventions, and

locations" separately.  Id.

Notably, of the independent claims in the '766 patent, only claims 1 and 16 use "format" and "location" together in the manipulation step.  '766 patent, 17:66-18:3 (claim 1); 18:65-19:4 (claim 16).  In the '766 patent, claim 1 involves the step of "manipulating at least one of the extracted configuration settings from *a location, a name, a value, and a format*" and claim 16 provides that "at least one of the extracted configuration settings is manipulated from *a source location, a source name, a source value, and a source format*[.]"  Id. (emphasis added).  Unlike the '766 patent, independent claims 1 and 16 of the '877 patent describe transitioning only the "format" of the configuration setting.  '877 patent, 17:59-62 (claim 1); 18:65-19:3 (claim 16).  There is no mention of transitioning the location, name, or value of the configuration settings in the '877 patent claims.

The other basis for Defendant's indefiniteness argument is the '766 prosecution history.  But there is no evidence that during the prosecution of the '877 patent, Plaintiff argued that changing the "format" is not the same as changing the "location" of a configuration setting.  In other words, it appears that while Plaintiff used "format" broadly in the '877 patent claims, Plaintiff may have used "format" in a narrower sense in the '766 claims.

In light of the difference in claim language in the '877 and '766 patents and the prosecution history of the '766 patent, I find that the term "format" is not indefinite.  At this juncture, I decline to rule whether a particular claim is indefinite.  Indefiniteness of a claim is most appropriately addressed at summary judgment, not at the claim construction stage.  Computer Stores Northwest, Inc. v. Dunwell Tech, Inc., No. CV-10-284-HZ, 2011 U.S. Dist. LEXIS 58660, at *107-108 (D. Or. May 31, 2011).

/ / /

/ / /

16 - OPINION & ORDER

B.       Proposed Definitions of "Format"

Plaintiff proposes that "format" should be construed as "specific arrangement of data"; and in the alternative to its indefiniteness argument, Defendant proposes that the term be construed as "the specific arrangement of data that is distinct from name, location, and value." I agree with the parties that "format" involves the "specific arrangement of data." The specification is replete with references to "format" as data that can be stored in multiple ways. '877 patent, 3:20-28; 4:35-38; 7:18-22; 8:3-8; 13:14-25. However, for reasons discussed in the indefiniteness analysis, I decline to impose the limitation that the data is "distinct from name, location, and value." Therefore, I construe "format" to mean "a specific arrangement of data."

CONCLUSION

Based on the foregoing, Plaintiff's motion for order construing claims [72] is granted in part and denied in part. The terms are construed as stated on the record and in this opinion and order.

IT IS SO ORDERED.

Dated this _____ day of October, 2014.


MARCO A. HERNÁNDEZ
United States District Judge

17 - OPINION & ORDER